UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| CenturyLink Communications, LLC, Global Crossing Telecommunications, Inc. and WilTel Communications LLC,<br><br>    Plaintiffs,<br><br>vs.<br><br>Peninsula Fiber Network, LLC, Alpha Connect, LLC, Baraga Telephone Co., Hiawatha Telephone Co., Upper Peninsula Telephone Co., Midway Telephone Co., and Ontonagon County Telephone Co.,<br><br>    Defendants. | Case No. 19-cv-1013 |

## COMPLAINT

1. Plaintiffs CenturyLink Communications, LLC, Global Crossing Telecommunications, Inc. and WilTel Communications LLC bring this complaint against Defendants Peninsula Fiber Network, LLC, Alpha Connect, LLC, Baraga Telephone Company, Hiawatha Telephone Company, Upper Peninsula Telephone Company, Midway Telephone Company, and Ontonagon County Telephone Company for overcharging Plaintiffs over one million dollars on the transit of long-distance telephone calls carried by Plaintiffs to or from Defendants' telephone networks.

2. Under state and federal law, Defendants were required to tariff their interstate and intrastate rates in compliance with benchmark rules prescribed by the Federal Communications Commission ("FCC") and the Michigan Public Service Commission ("MPSC"). Defendants failed to do so. As a result, the provisions of their tariffs under which they assessed these charges were void and the charges themselves were unlawful. Plaintiffs are

entitled to recover monies improperly charged and collected from Plaintiffs pursuant to these unlawful tariff provisions.

## Parties

3. Plaintiff CenturyLink Communications, LLC ("CenturyLink") is a Delaware limited liability company with its principal place of business in Colorado. It is a wholly owned subsidiary of CenturyLink, Inc., a publicly traded Louisiana corporation with its principal headquarters in Louisiana.

4. Plaintiff Global Crossing Telecommunications, Inc. is a Michigan company with its principal place of business in Colorado. Its sole owner is Level 3.

5. Plaintiff WilTel Communications LLC is a Delaware limited liability company with its principal place of business in Colorado. Its sole owner and member is Level 3.[1]

6. Defendant Peninsula Fiber Network, LLC ("PFN") is a Michigan limited liability company with its principal place of business in Lansing, Michigan. PFN operates a network that runs through Michigan and Wisconsin.

7. Defendant Alpha Connect, LLC ("Alpha Connect") is a Michigan limited liability company with its principal place of business in Marquette, Michigan.

8. Defendant Baraga Telephone Company ("Baraga") is a LEC and a Michigan profit corporation with its principal place of business in Baraga, Michigan.

9. Defendant Hiawatha Telephone Company ("Hiawatha") is a LEC and a Michigan profit corporation with its principal place of business in Munising, Michigan.

10. Defendant Upper Peninsula Telephone Company ("Upper Peninsula") is a LEC and a Michigan profit corporation with its principal place of business in Carney, Michigan.

---

[1] In this Complaint Plaintiffs refer to Global Crossing Telecommunications, Inc. and WilTel Communications LLC collectively as "Level 3."

2

11. Defendant Midway Telephone Company ("Midway") is a LEC and a Michigan profit corporation with its principal place of business in Munising, Michigan.

12. Defendant Ontonagon County Telephone Company ("Ontonagon") is a LEC and a Michigan profit corporation with its principal place of business in Munising, Michigan.[2]

## Jurisdiction and Venue

13. This Court has original jurisdiction over the claims in this Complaint for Defendants' violations of the Communications Act, 47 U.S.C. § 151 *et seq.*, pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 207.

14. The Court has jurisdiction to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

15. This Court has original jurisdiction over the remaining claims in this Complaint pursuant to 28 U.S.C. § 1367, because they are so related to the claims brought by Plaintiffs arising from the Communications Act, over which the Court has original jurisdiction, that they form part of the same case or controversy.

16. The Court has personal jurisdiction over Defendants PFN, Alpha Connect, Baraga, Hiawatha, Upper Peninsula, Midway, and Ontonagon because they are incorporated in and have their principal places of business in Michigan and are therefore subject to this Court's general jurisdiction.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants PFN, Alpha Connect, Baraga, Hiawatha, Upper Peninsula, Midway, and Ontonagon reside in this District.

---

[2] In this Complaint Plaintiffs refer to Baraga, Hiawatha, Upper Peninsula, Midway, and Ontonagon collectively as the "ILEC Defendants."

18. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in this Complaint occurred in this district.

## Allegations of Fact

19. This case involves a dispute over the rates that the ILEC Defendants, in conjunction with PFN and Alpha Connect, charge CenturyLink and Level 3 for providing tandem switch functionality on long-distance telephone calls to or from the ILEC Defendants' networks. Since at least 2013, Defendants have substantially overcharged Plaintiffs for tandem functionality in violation of state and federal law.

*Long Distance Calling on the Public Switched Telephone Network*

20. Completing long-distance telephone calls requires the coordination of at least two different types of telecommunications providers: long-distance carriers (also known as inter-exchange carriers, or "IXCs"), and local exchange carriers (known as "LECs"). LECs own the hardware that connects to individual customers in their local area and provide local telephone service to those individual customers. IXCs, by contrast, connect different LECs to each other.

21. To complete a long-distance telephone call, the LEC serving a calling party in its exchange must route that call onto the network of an IXC, which must then route that call to the LEC that serves the called party.

22. Plaintiffs are common carriers and operate as both IXCs and LECs. The issues in this Complaint, however, concern only their roles as IXCs in carrying long-distance telephone traffic to and from the Defendants.

*Switched Access Charges*

23. When a LEC either receives a call from or delivers a call to an IXC on behalf of an end-user, it provides what is known as switched access service.

4

24. Since the break-up of AT&T in 1984, IXCs have paid LECs switched access charges to provide switched access service. *See Sw. Bell Tel. Co. v. FCC*, 153 F.3d 523, 535, 546 (8th Cir. 1998); *Qwest Commc'ns Co. v. Aventure Commc'ns Technology, LLC*, 86 F. Supp. 3d 933, 941–44 (S.D. Iowa 2015); 47 U.S.C. § 251(g).

25. The rates, terms, and conditions required for LECs to impose switched access service charges on interstate calls must be set forth in "access tariffs" duly filed with the FCC. *See* 47 U.S.C. § 203.

26. State commissions require the same for intrastate calls. In Michigan, intrastate communications are regulated by the Telecommunications Division of the MPSC. LECs must file tariffs with the MPSC in order to assess tariffed charges for intrastate calls made within Michigan.

*The Role of PFN and Alpha Connect in Long-Distance Telephone Calling*

27. IXCs often connect directly to the originating and terminating LECs (i.e. the LECs that directly serve the end users) in order to route traffic to or from the LECs. But in some areas, the volumes of traffic do not justify direct connections to a LEC. In those cases, to obviate the cost of building these direct connections and to ensure that the IXCs have access to the local exchanges, the LECs issue routing instructions to IXCs to connect to an intermediate carrier, also a LEC, which in turn connects directly to the originating and terminating LECs.

28. PFN and Alpha Connect are common carriers designated in this manner by various LECs, including the ILEC Defendants, to serve this intermediate function in the delivery of interstate and intrastate long-distance calls.

29. In connecting to IXCs and LECs, PFN and Alpha Connect provide an element of switched access service known as tandem switching and tandem-switched transport. In doing so, PFN and Alpha Connect operate as competitive local exchange carriers or "CLECs."

5

30. In providing tandem services, PFN and Alpha Connect do not deliver calls directly to the ILEC Defendants' end users. Instead, IXCs connect to PFN and Alpha Connect, which in turn connect to the ILEC Defendant that service end users. This reduces the total of connections that must be made between the ILECs and IXCs, avoiding the fixed cost of building each of those direct connections and potentially reducing the cost of routing traffic to or from the ILECs in the areas that PFN and Alpha Connect serve.

31. Typically, the entity that provides the service (such as tandem functions) bills the IXC for the service it provided using the rates set forth in its access tariff. In this case, however, when PFN and Alpha Connect provide tandem services on calls that are connected to the ILEC Defendants, PFN and Alpha Connect themselves do not assess charges to Plaintiffs. Instead, the ILEC Defendants assess charges for the tandem services provided by PFN and Alpha Connect in connection with calls routed to or from their local exchanges, bill Plaintiffs for the tandem services provided by PFN and Alpha Connect, and then remit payment back to PFN and Alpha Connect for the tandem services.

*Regulations Governing Rates Assessed by LECs*

32. The regulations governing the rates LECs may charge for providing switched access service depends in part on the type of LEC, of which there are two: "incumbent" LECs (such as the ILEC Defendants), and "competitive" LECs (such as PFN and Alpha Connect). "ILECs are the traditional providers of local exchange services, while CLECs are new entrants into the market that compete with ILECs." *Connect Insured Tel., Inc. v. Qwest Long Distance, Inc.*, No. 3:10-CV-1897-D, 2012 WL 2995063, at *1 n.1 (N.D. Tex. July 23, 2012).

33. The FCC regulates the rate levels ILECs may charge for their services, including switched access. *See In Re Access Charge Reform*, 16 FCC Rcd. 9923, 9975 n.93 (2001). The rates charged by ILECs serve as a benchmark for CLECs, which may file tariffs

permitting them to assess charges up to the rates assessed by ILECs. *Id.*; *see also* 47 C.F.R. § 61.26. CLECs may charge rates in excess of these benchmarks only if they have a contractual agreement with the IXCs permitting them to charge these above-benchmark rates. *Id.* For these purposes, there are two type of ILECs—price cap ILECs, which must establish their rates pursuant to FCC rules applicable to price cap ILECs, and rate of return ILECs, which must establish their rates pursuant to rules applicable to rate of return ILECs. And, price cap ILEC rates set under these rules tend to be lower than the rates permitted for rate of return ILECs.

34. Thus, 47 C.F.R. § 61.26 requires a CLEC's originating and terminating interstate access rates to be the same or lower than the equivalent rates assessed by the ILEC with whom the CLEC competes.

35. Michigan state law imposes similar restrictions. Under Michigan law, providers of access services are required to set intrastate switched access service rates no higher than the rate allowed by the FCC for their interstate services. *See* Mich. Comp. Laws Ann. § 484.2310(2) (2014).

*Applicability of FCC and Michigan Benchmark Rules to*
*PFN, Alpha Connect, and ILEC Defendants*

36. The FCC's benchmark rules discussed above apply to PFN and Alpha Connect, and to the ILEC Defendants to the extent they tariff and bill for PFN's and Alpha Connect's services in the manner described herein.

37. The FCC has expressly held that common carriers such as PFN and Alpha Connect, that provide elements of switched access service, including tandem services, are CLECs subject to the FCC's benchmark rules. *See AT&T Corp. v. Iowa Network Services, Inc. d/b/a Aureon Network Services*, 32 FCC Rcd. 9677 (2017) ("*Aureon*").

38. For example, *Aureon* concerned another intermediate carrier which was organized for the express purpose of performing tandem functions like those provided by PFN

7

and Alpha Connect and billed by the ILEC Defendants. That is, the carrier connected IXCs' facilities to a tandem switch, which in turn, is connected to ILEC networks at various points of interconnection.

39. The carrier in *Aureon* assessed charges to IXCs pursuant to its tariff to "recover[ ] the costs of both transport and tandem switching." *Id.* ¶ 11. However, the carrier contended that it was not subject to the benchmark rules for various reasons. But the FCC disagreed, holding that the carrier was a CLEC under 47 CFR § 51.5 because it "provi[des] . . . exchange access." 32 FCC Rcd. 9677 ¶ 25. And as a CLEC, the carrier "must comply" with the benchmark rules. *Id.* ¶ 26.

40. This was true even though intermediate carriers do not "directly serve end users"; indeed, the FCC acknowledged that "nothing in the *USF/ICC Transformation Order* suggests that the Commission intended to exclude [intermediate carriers] from its scope." *Id.* ¶ 28.

41. The FCC also rejected the carrier's contention that its rates were "deemed lawful" when its interstate tariff took effect simply by virtue of the fact that the rates were set forth in its filed tariff. "[T]ariffs still must comply with the applicable statutory and regulatory requirements," and "[t]hose that do not may be declared invalid. Where the Commission, as here, has prohibited the filing of a tariff with rates above the transitional default rate, such a tariff cannot benefit from 'deemed lawful' status." *Id.* ¶ 29 (citations and quotation marks omitted).

42. Therefore, the intermediate carrier's tariff filing, which imposed interstate rates above the level permitted under the benchmark rules "was unlawful when filed and void *ab initio*." *Id.* ¶ 29; *see also In the Matter of Iowa Network Access Div., Tariff F.C.C. No. 1, 36*, 2018 WL 3641034 ¶¶ 21, 122 (OHMSV July 31, 2018), citing 47 C.F.R. § 61.26(f) ("If a CLEC provides some portion of the switched exchange access services used to send traffic to or from an

8

end user not served by that CLEC, the rate for the access services provided may not exceed the rate charged by the competing ILEC for the same access services. . . .").

43.     This same logic applies to the Defendants' Michigan tariffs and to intrastate calling in Michigan.

*Defendants' Violations of State and Federal Rate Regulations*

44.     Defendants will apparently try to justify PFN's and Alpha Connect's excessive rates by claiming PFN and Alpha Connect are subject to the FCC's rural exemption and/or are therefore subject to higher rate of return ILEC benchmarks under 47 C.F.R. 61.26.

45.     However, the rural exemption does not apply to intermediate carriers, or in circumstances where the carrier is not serving end users directly. *See, e.g., In the Matter of Iowa Network Access Division, Tariff F.C.C. No. 1,* 33 FCC Rcd. 7517, ¶¶ 31-34 (2018).

46.     Additionally, Michigan Bell Telephone Company d/b/a AT&T Michigan, a price cap ILEC, is the ILEC against which PFN and Alpha Connect, and conjunctively the ILEC Defendants, compete in providing tandem services, and therefore the ILEC whose rates serve as benchmarks for determining the rates that the ILEC Defendants, and by association, PFN and Alpha Connect, can charge.

47.     The FCC has looked to the following factors in determining that an ILEC is the competing ILEC for purposes of determining the applicable ILEC benchmark under 47 C.F.R. 61.26: (1) The ILEC "has the network in [the state] currently capable of providing the same tandem switched transport services that [the CLEC] provides." *In the Matter of Iowa Network Access Div.*, Tariff F.C.C. No. 1, 33 FCC Rcd. 7517, ¶ 23 (2018). (2) The ILEC "operates tandem switches in the same localities as [the CLEC's] currently-active points of interconnection with subtending LECs." *Id.* (3) The ILEC operates "tandem switches to which [the IXC] already connects, and presumably other IXCs, as well." *Id.*

48. AT&T Michigan is an ILEC that operates in the geographic areas in which PFN, Alpha Connect, and the ILEC Defendants operate, and provides many of the same tandem services PFN and Alpha Connect provide that are at issue here. It operates tandem switches in the same localities as PFN and Alpha Connect's currently active-points of interconnection with subtending LECs.

49. AT&T Michigan is therefore the competing ILEC to PFN and Alpha Connect. *See* 47 C.F.R. § 61.26(a)(2); *see also AT&T Services Inc. v. Great Lakes Comnet, Inc.*, 30 FCC Rcd. 2586 (2015), *Great Lakes Comnet, Inc. v. Fed. Commc'ns Comm'n*, 823 F.3d 998 (D.C. Cir. 2016), and *Aureon*, 32 FCC Rcd. 9677 (2017).

50. Thus, in order to be compliant with Michigan and FCC regulations, the ILEC Defendants' tariffs—including the tandem rates for services provided by PFN and Alpha Connect—must provide interstate and intrastate tandem rates at least as low as AT&T Michigan's.

51. The ILEC Defendants' tandem rates—which are contained in their access tariffs for tandem functionality provided by PFN and Alpha Connect—are substantially higher than those assessed by AT&T Michigan.

52. AT&T Michigan has tariffs on file with the MPSC and the FCC.

53. At all times relevant to this Complaint, the rates in AT&T Michigan's interstate and intrastate tariffs were at parity.

54. Though the ILEC Defendants have filed intrastate tariffs for the rates in question with the MPSC, since at least October 2013 and continuing to today, the ILEC Defendants' interstate tariffs have provided for interstate switched access rates that are substantially higher than the interstate switched access rates charged by AT&T Michigan.

55. Specifically, the ILEC Defendants' interstate tariffs set forth rates for Tandem Switched Transport and specific rate elements of Tandem Switched Transport, including "Tandem Switched Facility," "Tandem Switched Termination," and "Tandem Switching," in excess of the rates AT&T Michigan assesses for these same services.

56. During this time, the ILEC Defendants have not used AT&T Michigan's rates as a benchmark for its own rates, or reduced its rates for terminating switched access as AT&T Michigan has done, and as the ILEC Defendants were required to do. This includes, but is not limited to, the fact that the ILEC Defendants did not match AT&T Michigan's reduction of its interstate rates, despite being required by federal law to do so.

57. Since at least October 2013 and continuing to today, the ILEC Defendants' intrastate tariffs have also provided for intrastate switched access rates substantially higher than allowed by law.

58. Specifically, the ILEC Defendants' intrastate tariffs set forth rates for Tandem Switched Transport and specific rate elements of Tandem Switched Transport, including "Tandem Switched Facility," "Tandem Switched Termination," and "Tandem Switching," that are higher than those permitted by law.

59. During this time, the Defendants have not used AT&T Michigan's rates as a benchmark for their own rates.

60. There is no negotiated contract between Plaintiffs and the Defendants for switched access services.

61. From October 2013 to the present, the ILEC Defendants have charged Plaintiffs under their tariffed rates which have violated state and federal law.

11

62. Since October 2013, the Defendants have charged Plaintiffs for interstate and intrastate switched access services above and beyond the rates they were permitted to assess, in an amount to be proved at trial, but in excess of $1.2 million.

63. Under the FCC rules, the ILEC Defendants' interstate and intrastate tariffs were rendered void once they fell out of compliance with federal law by at least 2013. *See In re. MCI Commcn's Servs., Inc. v. Wide Voice,* LLC, re No. BUREAUIDEB-19-MD-003, 2019 WL 5861952, at *1 (OHMSV Nov. 8, 2019). Because the ILEC Defendants' tariffs were void as of that date, the entire amount that the ILEC Defendants have charged Plaintiffs since at least October 2013 was improper.

64. In the alternative, even if the ILEC Defendants' tariffs are not wholly void, they contain impermissible rates, and Plaintiffs are due a refund in an amount to be proven at trial.

## COUNT I: Violation of Section 201(b) of the Communications Act
*Violation of 47 C.F.R. § 61.26 (All Defendants)*

65. Plaintiffs incorporate each of the preceding paragraphs as if fully stated herein.

66. Under Section 201(b) of the Communications Act, "[a]ll charges, practices, classifications, and regulations for and in connection with [an interstate or foreign] communications service, shall be just and reasonable," and any "charge, [or] practice . . . that is unjust or unreasonable is hereby declared to be unlawful."

67. 47 C.F.R. § 61.26(b) prohibits the filing of tariffs for CLEC services, such as the PFN and Alpha Connect services tariffed by ILEC Defendants, for interstate switched exchange access service, whether for terminating or originating calls, that are higher than the rate charged for such services by the competing ILEC.

68. From at least 2013 to the present, the ILEC Defendants have billed Plaintiffs interstate access charges at rates in excess of that permitted by 47 U.S.C. § 61.26. PFN and Alpha Connect—also common carriers—willingly participated in this unjust and unreasonable practice by allowing the ILEC Defendants to insert rates for their CLEC services into their ILEC access tariffs.

69. The ILEC Defendants' FCC tariffs improperly set out rates that exceeded those charged by the competing ILEC—here AT&T Michigan—in violation of federal law.

70. The assessment of charges by a common carrier pursuant to unlawful tariff provisions is by definition unjust and unreasonable.

71. As a direct and proximate result of the Defendants' violations of the FCC rules and Sections 201(b) of the Communications Act, Plaintiffs have suffered damages and loss, and are entitled to damages in an amount to be determined at trial but no less than $75,000 for unlawful charges they have paid the Defendants, along with interest and reasonable costs and attorneys' fees pursuant to 47 U.S.C. § 206.

### COUNT II: Breach of Contract
*Violation of Interstate Tariffs (All Defendants)*

72. Plaintiffs incorporate each of the preceding paragraphs as if fully stated herein.

73. The ILEC Defendants' interstate tariffs constitute contracts between the ILEC Defendants and any purchasers of services from those tariffs, which includes Plaintiffs. PFN and Alpha Connect were intended third-party beneficiaries of these contracts.

74. The Defendants were, and are, in breach of their tariffs by billing Plaintiffs charges pursuant to tariff provisions in excess of the benchmark rules promulgated by the FCC and MPSC and that were thus void as a matter of law.

75. As a direct and proximate result of the Defendants' conduct as alleged above, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to compensation for all amounts for which they have not received proper credits, plus interest.

### COUNT III: Breach of Contract
*Violation of Michigan Intrastate Tariffs (All Defendants)*

76. Plaintiffs incorporate each of the preceding paragraphs as if fully stated herein.

77. The ILEC Defendants' Michigan intrastate tariffs constitute contracts between the ILEC Defendants and any purchasers of services from those tariffs, which includes Plaintiffs. PFN and Alpha Connect were intended third-party beneficiaries of these contracts.

78. The Defendants were, and are, in breach of their tariffs by billing Plaintiffs charges pursuant to tariff provisions in excess of the benchmark rules promulgated by the FCC and MPSC and that were thus void as a matter of law.

79. As a direct and proximate result of the Defendants' conduct as alleged above, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to compensation for all amounts for which they have not received proper credits, plus interest.

### COUNT IV: Money Had and Received
*(All Defendants)*

80. Plaintiffs incorporate each of the preceding paragraphs as if fully stated herein.

81. Since at least 2013 through the present, the Defendants have failed to comply with state and federal law requiring them to lower interstate and intrastate tandem rates to those of the applicable ILEC.

82. Since at least 2013, the Defendants have improperly charged Plaintiffs more than they were entitled to charge for tandem services by an amount to be proved at trial, but not less than $75,000, under unlawful interstate and intrastate tariffs.

83. The ILEC Defendants remitted the monies Plaintiffs paid for these services to PFN and Alpha Connect, the entities that actually provided the tandem services.

84. All Defendants, including PFN and Alpha Connect, received or obtained possession of Plaintiffs' money when Plaintiffs paid the ILEC Defendants' improper charges under their interstate and intrastate tariffs.

85. By receiving Plaintiffs' money, Defendants appreciated a benefit.

86. Defendants' acceptance and receipt of Plaintiffs' money was unjust.

87. Equity and good conscience call for Defendants to return Plaintiffs' money to Plaintiffs.

88. Plaintiffs are entitled to recover the amounts Defendants have improperly charged them, plus interest.

### COUNT V: Unjust Enrichment
*(All Defendants)*

89. Plaintiffs incorporate each of the preceding paragraphs as if fully stated herein.

90. From 2013 through the present, the Defendants have failed to comply with state and federal law requiring them to lower their intrastate rates and benchmark their interstate and intrastate rates to those of the applicable ILEC.

91. Since at least 2013, the Defendants have improperly charged Plaintiffs more than they were entitled to by an amount to be proven at trial but not less than $75,000 under unlawful interstate and intrastate tariffs.

92. The ILEC Defendants remitted the monies Plaintiffs paid for these services to PFN and Alpha Connect, the entities that actually provided the tandem services.

93. Plaintiffs conferred a benefit on all Defendants, including PFN and Alpha Connect, by paying those illegal charges.

94. Defendants appreciated the fact of the benefit they received from Plaintiffs.

95. Acceptance and retention by Defendants of the benefits of Plaintiffs' overpayments would be inequitable.

96. Plaintiffs are entitled to recover the money Defendants have improperly charged, plus interest.

## COUNT VI: Declaratory Relief

97. Plaintiffs incorporate each of the preceding paragraphs as if fully stated herein.

98. The Defendants' continuing assessment of originating and terminating access charges pursuant to unlawful provisions of their interstate tariffs violates 47 C.F.R. § 61.26, which requires a common carrier to bill for interstate tariffed services at or below the rates of the competing ILEC.

99. The Defendants' continuing assessment of originating and terminating access charges pursuant to unlawful provisions of their interstate and intrastate tariffs also violates 47 U.S.C. § 201(b), which requires a carrier's charges to be just and reasonable and in conformance with FCC rules including but not limited to the *USF/ICC Transformation Order* and which prohibit unjust and unreasonable practices.

100. The Defendants' continuing assessment of originating and terminating access charges pursuant to unlawful provisions of the ILEC Defendants' intrastate tariffs also violates Michigan state law.

101. An actual and substantial controversy exists between the parties as to whether the Defendants are entitled under the FCC's rules and federal law to assess charges pursuant to these unlawful provisions of their interstate and intrastate tariffs.

102. An actual and substantial controversy exists between the parties as to whether the Defendants are entitled under Michigan law to assess charges pursuant to these unlawful provisions of their intrastate tariffs.

103. The controversy concerns the legitimacy of charges presently being asserted by the Defendants each month, and thus presents a real and immediate dispute and a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

104. Plaintiffs are entitled to judgment under 28 U.S.C. § 2201(a) declaring that:

   a. The Defendants' assessment of originating and terminating switched access charges pursuant to their interstate tariffs at rates above those assessed by the ILECs with which they compete violate 47 C.F.R. § 61.26;

   b. The Defendants' assessment of originating and terminating switched access charges pursuant to their interstate and intrastate tariffs at rates above those assessed by the ILECs with which they compete violates FCC rules, including but not limited to the *USF/ICC Transformation Order* and constitute a violation of 47 U.S.C. § 201(b);

   c. The Defendants' interstate and intrastate tariff rates for switched access charges are invalid and void;

   d. The Defendants' assessment of switched access rates pursuant to the invalid rates in their interstate and intrastate tariffs constitute breaches of the tariffs;

  e. The Defendants are prohibited from billing Plaintiffs at the rates currently set forth in their tariffs; and,

  f. Plaintiffs are entitled to a refund of the amounts they have overpaid the ILEC Defendants, including to the extent those overpayments were remitted to PFN and Alpha Connect.

## PRAYER FOR RELIEF

 105. WHEREFORE, Plaintiffs CenturyLink and Level 3 respectfully request that the Court enter judgment in their favor and against Defendants as follows:

  a. Ordering Defendants to pay Plaintiffs damages for their violation of the Communications Act, the breach of their tariffs, and other violations of state and federal law;

  b. Entering a declaratory judgment as set forth in Count VI above;

  c. Ordering Defendants to pay Plaintiffs' reasonable attorneys' fees and costs; and,

  d. All other relief the Court may deem just and necessary.

DATED:  December 2, 2019

      Respectfully submitted,

      ARMSTRONG TEASDALE LLP


      By:/s/Michelle Alamo
       Michelle Alamo, MI #P60684
       Charles W. Steese, CO #26924
       ARMSTRONG TEASDALE LLP
       Attorneys for Plaintiffs
       4643 South Ulster Street, Suite 800
       Denver, Colorado 80237
       720.200.0676
       malamo@armstrongteasdale.com
       csteese@armstrongteasdale.com